**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
(AUSTIN DIVISION)**

| | | |
|---|---|---|
| **ERICA LAFFERTY, et al.,** | § | |
| **Plaintiffs (Judgment Creditors)** | § | |
| | § | **Civil Action 1:24-cv-01198** |
| **vs.** | § | |
| | § | |
| **ALEXANDER E. JONES, et al.,** | § | |

_____

**RESPONSE TO MOTION TO ABSTAIN AND REMAND
FILED BY THE CONNECTICUT PLAINTIFFS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Alex Jones ("Jones" or "Removing Party") timely files this Response in opposition to the Connecticut Plaintiffs' Motion to Abstain and Remand (the "Remand Motion") and subject in all things to this Court's first the determination of the pending Motion to Transfer Venue to the Home Court (Dkt 10)[1] and in Response to the Remand Motion would show as follows:

**I.
PRELIMINARY STATEMENT**

1.      This removal arises from an effort by the Connecticut Plaintiffs to effectively "backdoor" the Texas law on domestication of a foreign *non-final judgment* (and one that is stayed from collection in Connecticut by statute), and to backdoor the jurisdiction of the United States Bankruptcy Court's automatic stay applicable to this Removed State Court Suit.  The backdoor worked in party by the Connecticut Plaintiffs proceeding in the State District Court "as if" the

---

[1]      Courts within the Fifth Circuit and this district, uniformly recognize the Venue Motion should be addressed and ruled on before addressing the Connecticut Plaintiffs' Motion for Remand.   *See CGT United States Ltd. v. Adient United States LLC*, 2022 U.S. Dist. LEXIS 237520, at *5 (W.D. Tex. 2022); *Smith v. FCA U.S., LLC*, 2020 U.S. Dist. LEXIS 134221, at *9 (W.D. Tex. 2020); *Santos v. Air China Ltd.*, 2019 U.S. Dist. LEXIS 141795, at *3-4 (W.D. Tex. 2019); *Tesoro Ref. & Mktg. Co. v. C.A.R. Enters.*, 2018 U.S. Dist. LEXIS 197032, 2018 WL 6050603, at *8 (W.D. Tex. Nov. 19, 2018); *La. ex rel. Tureau v. BEPCO, L.P.*, 2018 U.S. Dist. LEXIS 125214, at *2 n.7 (M.D. La. 2018);  *Woodlands Dev., LLC v. Regions Bank*, 2013 U.S. Dist. LEXIS 89029, 2013 WL 3233472, at *2 (E.D. La. 2013); *McPeters v. LexisNexis, A Div. of Reed Elsevier, Inc*., 2011 U.S. Dist. LEXIS 164985, 2011 WL 13253948, at *2 (W.D. Tex. May 27, 2011) (collecting cases); *Huntsman Corp. v. Int'l Risk Ins. Co.*, 2008 U.S. Dist. LEXIS 33242, 2008 WL 1836384, at *3 (E.D. Tex. Apr. 22, 2008).

notice provisions of the Texas statutes had been complied with (by certifying there was notice when in fact there was not), and then proceeding in the State District Court telling the Court that the Alex Jones Bankruptcy judge had entered a "final order" that the Connecticut Judgment was non-dischargeable (in fact, that false representation is made in the Connecticut Plaintiffs' State Court pleading)[2] and thus no longer subject to the automatic stay and the jurisdiction of the bankruptcy court.

> "… the Bankruptcy Court entered a ***final order*** determining that $1,115,000,000 of the Connecticut Judgment ***was non-dischargeable*** in bankruptcy *and, therefore, unaffected by the bankruptcy proceedings* (the Non-Dischargeable Connecticut Judgment).[3] [Emphasis added]

In the same quote the Connecticut Plaintiffs admit that only because of the false representation about a final order "…therefore (the Connecticut Plaintiffs motion is) unaffected by the bankruptcy proceedings."

2.      In truth and in fact, the bankruptcy court has not found that the Connecticut Judgment is non-dischargeable by a final order.  A partial summary judgment was entered finding that a substantial portion of the Connecticut Judgment was non-dischargeable on *res judicata* grounds,[4] and the leave to file an *interlocutory appeal* [applicable only to non-final orders] by Alex Jones was denied (with a recommendation by the Federal District Judge to address the parties' claimed inconsistencies in the non-final summary judgment).[5] Only a few weeks after the Connecticut Plaintiffs told the State District Court that there was final order determining the Connecticut Judgment non-dischargeable, did the same Connecticut Plaintiffs file their *Motion to Reconsider the partial, interlocutory (non-final) Summary Judgment*,[6] **with the bankruptcy court,**

---

[2]      See, **Exhibit 1** ¶ 1, pg. 2, Application for Post Judgment Turnover.
[3]      See, **Exhibit 1**  ¶ 1, pg. 2, Application for Post Judgment Turnover
[4]      *See*, **Exhibit 2** ¶ 1, pg. 2, Interlocutory Partial Summary Judgment J. Lopez.
[5]      *See*, **Exhibit 3** Opinion of Federal District Judge Charles Eskridge, pgs. 5-6.
[6]       *See,* **Exhibit 4** Connecticut Plaintiff's Motion to Reconsider the non-final Summary Judgment (without attached exhibits).

which could only be done if the Summary Judgment *was not a final order*.  That Motion to Reconsider is pending.   Clearly both statements referencing the same order but to different courts cannot both be true.

3.    The Connecticut Plaintiffs work slide-of-hand to select the law of "final judgments" that fits their need depending on which tribunal they appear.  There is no doubt that the Connecticut Judgment is on appeal and is stayed from execution and collection on the judgment by Connecticut statute.  The fact that the term "final judgment" means different things depending on the relief being sought when used does not excuse citing the case law definitions to fit the remedy sought where the definition does not fit the facts or remedy.

4.    The glaring misstatement of law found in the Motion to Remand is that "domestication of a foreign judgment is a ministerial act that does not require personal service on the debtor."  [*See*, pg.1 ¶2 Motion to Remand].  In other words, domestication of a judgment may be done without the knowledge of the judgment debtor and without complying with the express statutory provisions on domestication that mandates service of notice of the initiation of the process.[7]  Not only does the statute provide, in stark contrast, specific "shall" service of notice of any attempt to domesticate a foreign judgment in Texas, so also the Texas Supreme Court has mandated strict rules for service of notice on all party-litigants.   *See*, Rule 21,Tex.R.Civ.P.  However, according to the Connecticut Plaintiffs, the entire process may be done in secret.  Yet, and tellingly about service of notice, in order to obtain their domestication order, the Connecticut Plaintiffs were mandated by the same statute and the rules of the State District Court to file a "Certification of Service" of notice on the judgment Debtor Alex Jones, and his known counsel (presumably in the Connecticut suit).  The Connecticut counsel did file their Certificate of Service

---

[7]    *See*, Note 10, *infra*.

that falsely stated that an attached Notice[8] was served by US mail, return receipt requested, and received by the undersigned counsel Shelby A. Jordan.  Like the "final order" misstatement, the certification filed with the State District Court was likewise a knowing misstatement. [Compare **Exhibit 5** attached hereto and filed with the State District Court, to **Exhibit 6** attached hereto, being the actual "notice" mailed to Shelby A. Jordan].[9]

5.      Finally, although Plaintiffs argue that the domestication was obtained August 1, 2024, automatically, the Connecticut Plaintiffs waited 60+ days to notify again Jones counsel only of the new proceeding for Turnover and appointment of a Receiver – waiting just long enough to allow appellate times to run.

6.      There has to be a reason for this intrigue.  It appears clear to Alex Jones – the domestication without notice would allow entry of an order without due process, or a response, or any appellate review.  And, the Alex Jones responses, had he been notified in compliance with the statute, would have been significant – including all the issues raised in the Amended Notice of Removal [Dkt #7].  Of course, the Connecticut Plaintiffs anticipated these defenses which is likely why they waited more than 60 days from issuance of the domestication order until October 3, 2024, to give actual notice of the new Turnover and Receivership Motion, to be certain that appellate deadlines ran on the domestication order.

7.      All of this background leads straight back to the dominant jurisdiction for this timely Removal – the bankruptcy jurisdiction of the District Courts for the Southern District of Texas and the referenced bankruptcy court now handling every aspect of the right to collection on the Connecticut Judgment (which is all stayed unless and until the Judgment is found by final not

---

[8]      *See,* **Exhibit 5,** State Court filed copy of Domestication with Certificate of Service of the actual notice sworn to by Plaintiffs' counsel and filed with the State Court.  Compare to **Exhibit 6** sent to Shelby Jordan.
[9]      *See,* **Exhibit 6,** the actual notice <u>served on Shelby A. Jordan</u>, along with the envelope not identifying the sender by name.

appealable order to be non-dischargeable) and the determination of Alex Jones pre-and-post Chapter 7 Estate assets. These two dominant factors drove the manner and method of the Connecticut Plaintiffs effort to back-door the bankruptcy jurisdiction and trap Alex Jones' assets in a morass of State vs. Federal Court demands to be certain to tie up Jones and his exempt and non-exempt assets for an extended period of time and in multiple courthouses.

## II.
## REPLY TO THE MOTION TO REMAND

### A.    Response to Introduction

8.    Alex Jones denies the allegations in ¶1 of the Remand Motion that the Connecticut Judgment has been domesticated in Texas pursuant to the Uniform Enforcement of Foreign Judgments Act (UEFJA)" codified in Chapter 35 of the Texas Civil Practice and Remedies Code (the "Domestication Statute"). If a foreign judgment is not authenticated and filed in a Texas court *in compliance with the UEFJA*, it does not become a final, enforceable Texas judgment. *Siddiqui v. NextGear Cap., Inc*., 655 S.W.3d 654, 657 (Tex. App.-Amarillo 2022, no pet.). "Compliance with the components of the Act [is] essential to having a valid Texas judgment." *Id*. And without a final, enforceable Texas judgment, *post-judgment deadlines are not triggered. See Tex. Civ. Prac. & Rem. Code* ¬§ 35.003(c); Tex. R. Civ. P. 329b (a), (g) (stating that motion for new trial or motion to modify final judgment must be filed within thirty days of date judgment is signed). *Id*. The absence of "compliance" is critical to this Removed State Court case.

9.    Alex Jones denies the allegations in ¶2 of the Remand Motion that this removal is "riddled with misstatement" and that or that the Domestication Statute does not mandate service of "notice of the filing" (which of course it does[10]) for the very reason the Connecticut Plaintiffs

---

10    **Sec. 35.004. Affidavit; Notice of Filing.**
(a)    *At the time* a foreign judgment is filed, the judgment creditor or the judgment creditor's attorney shall file with the clerk of the court *an affidavit* showing the name and last known post office address *of the judgment debtor* and the judgment creditor.

now argue was not done – that Alex Jones did not appear and argue that the Connecticut Plaintiffs domestication efforts were fatally defective (the Connecticut Judgment was stayed as a matter of law in Connecticut;  the collection of the Connecticut Judgment was automatically stayed by the pending bankruptcy proceedings, *etc*.).  Jones did not appear because neither Jones nor his counsel was given notice that the Connecticut Plaintiffs representation to the State District Court was given – but a blank form notice constituting no notice at all and *with no attempt ever to serve on Alex Jones with a notice*.[11]

10.    Alex Jones denies the allegations of ¶ 3, that the USPS Return Receipt provided Alex Jones with notice of the domestication.  Jones simply asks the Court to *view what was not served on Jones* and compare to what was served on Shelby A. Jordan.  What the Connecticut Plaintiffs *certified* to the State District Court was served.  [*See*, **Exhibits 6** and **7**].  Until the Connecticut Plaintiffs' Domestication proceeding was filed, they could not give "notice" of the filing.  Once it was filed, the "notice" would have been as **Exhibit 6** discloses, not the blank identification of the court **Exhibit 7**.

11.     Alex Jones is not required to admit or deny the Connecticut Plaintiff Motion ¶4.

**B    Response to Background**

12.    The statements are not relevant to any issue of the Remand Motion.  Beginning at

---

(b)        The judgment creditor or the judgment creditor's attorney *shall*:
(1)        **promptly** mail *notice of the filing* of the foreign judgment to the judgment debtor at the address provided for the judgment debtor under Subsection (a); and
(2)        file proof of mailing of the notice with the clerk of the court.
(c)        The *notice must include* the name and post office address of the judgment creditor *and if the judgment creditor has an attorney in this state, the attorney's name and address*.   (Emphasis Added.)
Acknowledged and quoted in the Connecticut Plaintiffs' Motion to Remand ¶ 14, pg. 5.

[11]        And it could never be argued by the Connecticut Plaintiffs did not know where Alex Jones worked and lived every day.  Both addresses were known to the multiple lawyers representing Alex Jones as a result of the bankruptcy disclosures of where he worked and the fact that they threatened to object to his Austin homestead exemption.  They simply did not attempt to serve him as the statute mandates.

¶ 7 Jones denies the allegation that the Bankruptcy Court *"*entered an order determining that $1,115,000,000 of the Connecticut Judgment was non-dischargeable in bankruptcy.*"* The Court entered a partial interlocutory summary judgment (*that the Connecticut Plaintiffs are now seeking reconsideration*).  There is no judgment of any kind with respect to the remaining $321 million of the Connecticut Judgment.  But this is not what the Connecticut Plaintiffs told the State District Court.

13.    Jones denies all of the allegation in ¶ 8, in particular the first sentence that "filing their Notice … thereby entitling the Connecticut Judgment to the same recognition in Texas …." Filing is not domestication … filing and strict compliance with the statute is domestication.  [*See*, supra pg. 8].  Compliance is filing coupled with due process Notice, and an opportunity for a hearing, after which domestication may be found.  In this case it would not have been domesticated, but for the failure of proper Notice to Jones.  And no "final judgment" exists, even the partial summary judgment cautions that the Connecticut Judgment is on appeal and must await until final to even know the amount.  [*See, infra* ¶ 14]

**C.    Reply to the "Removed " Action –  Defining "A Final Judgment"**

14.    The Remand Motion at ¶ 11 purports to recite the "Final Judgment" definition that is inapplicable to the facts of this case.  A case that has been superseded (here by statute) is not a "final judgment" for any "collection" purposes because res judicata, collateral estoppel, or full faith and credit do not apply until a final.  Which is exactly the caution noted in the bankruptcy court's motion for partial summary judgment at note 45: "[t]he ultimate amount of this nondischargeable debt could change if Jones succeeds on his state court appeal."[12]

15.    Nor does "full faith and credit", collateral estoppel, res judicata apply to a non-final

---

[12]        *See*, **Exhibit 6**, pg. 15 of 18, Note 45, Bankruptcy Dkt 76 Page 15 of 18.

judgment on appeal [*See*, *Miller v. Dunn*, 35 F.4th, 1007 (5thCir. 2022)[13]] (in particular one that that has been superseded by statute on appeal.[14]  Of Course the Connecticut Plaintiffs did not mention to the State District Court of the superseding judgment.  Nor did they mention that the partial, interlocutory summary judgment recognizes that the Connecticut Judgment may be vacated,[15] which then moots any objection to discharge issue.

### D.    Reply to Defining the "Removed Action"

16.    Alex Jones denies again the repeated misnomer referencing the generic term "final judgment" as only determined at the trial court level.  As recited above, for purposes of enforcement of a superseded judgment, or for any res judicata or collateral estoppel, as the Restatement provides, it is only when the judgment is final with no further appealability.  It is undisputed the Connecticut Judgment is superseded by Connecticut Statute while on appeal.

17.    Paragraphs 12, 13, 14, repeat earlier paragraphs and are addressed above.  However, at pg. 6, ¶ 15 Connecticut *Plaintiffs admit* that they intentionally did not serve Alex Jones individually as the statute requires and "as a courtesy to Jones" the Connecticut Plaintiffs wanted to protect his privacy.   As questionable an excuse as this is, it does not do away with the fact that the Connecticut Plaintiffs intentionally failed to serve Alex Jones or comply with the domestication statute.

---

[13]      In *Miller,* the Fifth Circuit joined all other circuits holding that there is no collateral estoppel, *res judicata,* or even issue preclusion by a state court judgment that is not final on appeal.  The Fifth Circuit expressly overruled all its prior precedent to the contrary, following the instructions of the Supreme Court, holding that Rooker-Feldman does not bar a ***subsequent federal court suit*** while the same State Court suit remains pending on appeal.   That subsequent federal court suit was filed by these Connecticut Plaintiffs, in response to which Alex Jones removed this Removed State Court Case based on bankruptcy jurisdiction over their efforts to obtain a non-dischargeable judgment on collateral estoppel and *res judicata* grounds.   The Removed State Court Suit is a derivative of the Connecticut Plaintiffs' efforts that are barred by the Fifth Circuit and Supreme Court precedent.

[14]      **Restatement (Second) of Conflict of Laws**
**Restatement (Second) of Conflict of Laws § 107:** This section explains that a judgment must be final before it is entitled to recognition and enforcement in other states. *It describes a "final" judgment as one that is not subject to further judicial review within the originating state's court system, meaning appeals are concluded.*

[15]      **Restatement 2d of Conflict of Laws, § 112 Vacated Judgment**
A judgment will not be enforced in other states if it has been vacated in the state of rendition.

18.     Alex Jones denies that the conclusion that Jones, on the notice served, could have appeared and "filed a Motion to Vacate" or a number of other defenses for that matter.  But he would have to know of the filing.  Appeals governed by the Texas Rules of Civil Procedure, provides for a 30-day deadline to move to vacate or new trial, 45 days for notice of appeal.  Jones counsel was furnished a fully completed new proceeding for Turnover and Receiver 60+ days after the appellate deadlines had expired, leaving only a potential bill of review with onerous provisions. Including the requirement of filing a collateral attack on the judgment.

19.     What is important here is the Connecticut Plaintiff's quoted position in ¶ 20 that nothing can be re-litigated in this Court, *cited as something Jones cannot do*, yet the bankruptcy court has already partially ordered exactly what the Connecticut Plaintiffs claim Alex Jones cannot do.  This is true because the Connecticut Judgment, as non-final and on appeal, can be litigated in this Court, [*Miller v. Dunn*, 35 F.4th, 1007  (5thCir. 2022)] and must be relitigated in bankruptcy court as part of the objection to discharged filed by the Connecticut Plaintiffs.  The portion of the Objection to Discharge determined so far as not governed by res judicata or collateral estoppel, will require trial on precisely the counterclaim issues raised – that trial will "go the merits of the original controversy."

20.     Thus, critical to that determination is the full scope of the counterclaim and the allegations of constitutional violations that plagued Alex Jones defense of the Connecticut trial claims.  Already the bankruptcy court has decided that in excess of $300 million will be subject to that trial which should include the currently filed counterclaim and defenses before this Court.

21.     Next, at ¶ 21 the Connecticut Plaintiffs discuss an obligation for Alex Jones to seek a stay in Texas from their efforts at turnover and a receivership, *that already exists in Connecticut*. The Connecticut Plaintiffs fail to mention to this Court that the Bankruptcy Code also and already provides the "automatic stay" from collection on the non-final judgment.  The automatic stay

requires *the Connecticut Plaintiffs* to seek relief in the bankruptcy court, not Alex Jones. There is no need to refer to the third stay in *Tex. Civ. Prac. & Rem. Code § 35.006(a)* that itself already provides this an automatic stay but shifts the burden to Alex Jones. At every turn, it is the bankruptcy court and bankruptcy code that is already handling these issues, not a State District Court with no power over the automatic stay against enforcement of actions against Alex Jones.

22.    The Connecticut Plaintiffs repeat the mantra, in ¶ 22, that they did not have to give Alex Jones any due process whatsoever – neither personal notice of the domestication of the Connecticut Judgement nor any notice or process for the Motion for Turnover and appointment of a Receiver. No Texas law stands for that proposition that turnover or receiverships may be imposed on a Texas citizen without notice or process served. Plaintiffs already admit that they intentionally did not serve Alex Jones at all pursuant to statute. Plaintiffs try to parlay the incomplete form of a Notice of domestication on Alex Jones counsel as service on Alex Jones for the turnover and receivership. Yet, knowing that this position lacked merit, the Connecticut Plaintiffs filed a certificate of service on two Alex Jones bankruptcy counsel, naming them *as "attorney of record"* in the turnover and receivership, a proceeding *in which neither counsel nor Jones ever appeared*.

23.    In ¶ 23 Connecticut Plaintiffs suggest to this Court that failure to provide notice of a turnover proceeding is not a denial of constitutional due process. This Court is likely aware that Texas mandates due process *in every conceivable Court proceeding*, whether domestication, turnover, receivership, or anything else brought to a court for adjudication and whether or not a statute provides for due process notice:

**Tex.R.Civ.Proc Rule 21.  Filing and Serving Pleadings and Motions**

(a) <u>Filing and Service Required</u>.  *Every* pleading, plea, motion, or application to the court for an order, whether in the form of a motion, plea or other form of request, unless presented during a hearing or trial, must be filed with the clerk of the court in writing, must state the grounds therefor, must set forth the relief or order sought and <u>*at the same time **a true copy**, must be served on all parties*</u>,

and must be noted on the docket.[16]  (Emphasis Added.)

    (b)  <u>Service of Notice of Court Proceedings</u>.  *An application to the court for an order and notice of any court proceeding*, as defined in rue 21d(a),[17] not presented during a court proceeding, *must be served on all other parties not less than three days before the time specified for the court proceeding …. Notice of any court proceeding must contain the information needed for participants*, as defined in rule 21d(a) *to participate in the proceeding*, including the location of the proceeding or instructions for joining the proceeding electronically, the court's designated contact information, and instructions for submitting evidence.   (Emphasis Added.)

Notwithstanding the multiple references of no "due process" needed in Texas court proceedings, the Supreme Court-promulgated Rules of Civil Procedure establish otherwise.  A judgment or order obtained without due process is void [18] and likewise not entitled to full faith and credit. *Id*.

## III.
## RESPONSE TO ARGUMENTS AND AUTHORITIES

    24.    The Connecticut Plaintiffs cite in ¶ 26 a second circuit Court of Appels for the proposition that "[a]ctions to enforce state court judgments in federal court are rare" but fail to add the relevant information applicable here - "except in bankruptcy court where they are often brought for enforcement," as is the case here.  Plaintiffs do acknowledge that a state court judgment "may be enforced in federal court when there is an independent basis for jurisdiction" – such as bankruptcy jurisdiction, which is what the Connecticut Plaintiffs are now seeking in the pending bankruptcy court Objection to the Discharge.

    **A.**    **Response to Jones Removal is untimely**

---

[16]    Although Plaintiffs admit that service of notice was mandated, they did not serve a "true copy" of what they filed or certified to on Alex Jones.  And the omissions were glaring on the two lawyers that were served.

[17]    Texas Rule of Civil Procedure 21d(a) defines a "court proceeding" as any appearance before the court, such as a hearing or trial, or any legal matter before a judge or other court official. It also defines a "participant" as any party, attorney, witness, court reporter, or juror who participates in a court proceeding.

[18]    *See, e.g., World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (The Due Process Clause of the Fourteenth Amendment limits the power of a state court to render a valid personal judgment against a nonresident defendant.) (citing Kulko v. Superior Court, 436 U.S. 84, 91 (1978)).*  A judgment rendered in violation of due process is void in the rendering State *and is not entitled to full faith and credit elsewhere.  Id.*

25.     As to the Diversity basis for removal, notwithstanding the clear bankruptcy jurisdiction 28 U.S.C. 1334 and 157(a)(b), Alex Jones did timely raise the complete diversity basis for his timely removal.  To attempt to avoid the timeliness of this removal that occurred only days after first receiving a copy of a notice of hearing complying with Rule 21, TRCP,  seeking a new turnover order and a new receivership, the Connecticut Plaintiffs continue to argue that no notice was necessary, but if it was, that their defective notice was served in early August, 2024 and was sufficient to begin the 30-day time limit of § 1446 removal.

26.     Connecticut Plaintiffs correctly recite the 30-day filing rule of § 1446(b)(1) but want this court to revert to the old cases that permitted service of courtesy copies of incomplete filed or "to be filed" pleadings, without process or proper statutory notice, as starting the 30-days. *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 347–348, 119 S. Ct. 1322, 143 L. Ed. 2d 448 (1999) put an end to that slide-of-hand "courtesy copy" trick and requires actual service of process.  The Supreme Court ruled that receipt of a copy of the complaint without formal service cannot commence the 30-day removal period and that only proper service on the defendant would commence the 30-day period. Here, there was no proper service of notice or of process in either the domestication or turnover/receivership case, as illustrated above.  Alex Jones learned for the first time that a domestication proceeding had been prosecuted without "proper notice" to him when his lawyers were served on October 3, 2024, a pleading that indicated a turnover and receivership proceeding had been filed.  Removal occurred within only a few days after, and long before the 30-day deadline of § 1446.  Removal regarding diversity was timely under § 1446. Discussed later is the removal by Alex Jones of this case pursuant to 28 U.S.C. § 1452, removals related to a bankruptcy case.

**B.      Response to the Argument that this (Removed) matter is ancillary to a state court suit that is final, and removal is therefore Improper**

27.     The Connecticut Plaintiffs argue that the domestication of the Connecticut Judgment in the pending state court suit turnover/receivership is based on a "final order." Title 28 U.S.C. § 1441(a) permits removal of "any civil action brought in [s]tate court of which the district courts of the United States would have original jurisdiction." 28 U.S.C. § 1441(a). The statute allows a defendant to "remove a state court action to federal court only if the action could have originally been filed in federal court." *Anderson v. American Airlines, Inc.*, 2 F.3d 590, 593 (5th Cir. 1993); *see, also Hardisty v. Family Moving Servs. Inc.,* Civil Action No. 3:23-CV-00307-E, 2024 U.S. Dist. LEXIS 51182, at *7 (N.D. Tex. Mar. 22, 2024). First, the turnover and receivership action were subject to the automatic stay and should have been filed in the bankruptcy court of original federal District Court jurisdiction. That original jurisdiction on federal District Court was ignored by the Connecticut Plaintiffs, and in violation of the exclusive right to enforce the automatic stay in the bankruptcy court. Second, § 1441 removals do not have the "or otherwise" language found in § 1446 and removal is based solely on a party being "properly joined or served." As noted, Alex Jones was neither "properly joined" (the automatic stay pevented that joinder which violation voids and joiner) and he was never "served" with any due process, statutory-mandated Notice.[19] Removal under §§ 1446 and 1441 was therefore proper.

28.     Finally, contrary to the allegation in ¶ 32, a Texas receivership is a "civil action" . *See*, e.g. CPRC § 64.001 et. seq.

**C.** **Response to the Argument that Snap Removal is inapplicable to defeat the Forum State Defendant Exception because there is no requirement that Jones be "properly joined and served" in the underlying proceeding**

---

[19]     Again, Plaintiffs admit that they never attempted service on Alex Jones and recite in ¶ 30 *Hackman*, at 394 for the proposition that the *statute requires* that the "notice … be sent by regular mail in one of two ways, neither of which Plaintiffs acknowledge they did not do.  Notwithstanding Plaintiffs' argument, Hackman, the domestication statute itself, and Rule 21, Tex.R.Civ.P. speak directly to mandatory due process notice.

29.    Beginning at ¶ 33, the Connecticut Plaintiffs re-argue that nothing they did in the Texas State District Court require Alex Jones being "properly joined" (*i.e.*, bringing an action in violation of the automatic stay is of no import) "and served" (*i.e.*, no due process was required at any step of the domestication, turnover or appointment of a receiver) and thus § 1441 removal was improper.   As illustrated above several times, the Connecticut Plaintiffs are wrong on both claims.

30.    And so, recognizing they are wrong about due process, the Connecticut Plaintiffs next argue that Alex Jones was "properly joined and served". [*See*, ¶ 35 Remand Motion].  Even though the Texas statute mandates serving a Notice, the Connecticut Plaintiffs re-argue that all is required is "sending" the notice, not actual service.  But they admit they never even attempted to send a Notice to Alex Jones [*See*, ¶ 15, Remand Motion] and the one that was sent to Jones bankruptcy counsel was fatally defective as a Notice of anything, as it violated Rule 21 TRCP. The Connecticut Plaintiffs make no argument responding to the failure to be "properly joined" in the turnover/receivership, because there is no response to the fact that Alex Jones was not properly joined, in face of the automatic stay preventing unilaterally suing of a debtor in bankruptcy, which is under the exclusive and original jurisdiction of the federal District Court.

**D.  Response to the Argument that Snap Removal should not be permitted by a forum defendant**

31.    The Fifth Circuit has made no distinction in the context of a Snap Removal as between non-forum Defendants and forum Defendants.  Connecticut Plaintiffs argue against what they admit as District Courts in the Fifth Circuit have permitted - a "snap removal" of forum defendants.  (*See*, Alex Jones Amended Removal for all case authority supporting this removal, §I, A, note 8; ).  Connecticut Plaintiffs ignore the reasoning of Snap removal's impact based on the express language.  A Snap removal allows jurisdiction when ultimately all served parties are served and diversity no longer exists, just as allowing a removal by a forum defendant.

**E. Response to the Argument that This Proceeding is not "related to" Jones Bankruptcy case, vitiating this alleged ground for jurisdiction**

32.    Alex Jones has filed both his Amended Removal and Motion to Transfer this Removed Case to the "home" bankruptcy court.  Importantly, Alex Jones incorporates herein all of the facts, conclusions, and legal arguments set out in the Amended Removal and the Motion to Transfer Venue to the Home Bankruptcy Court.  As noted in these incorporated filings, controlling the collection of the Connecticut Judgment is the determination of the Objection to Discharge which, if denied, will moot any right to "collect" the judgment in face of the discharge injunction that prevent all claims from surviving the Alex Jones Chapter 7 case.  Additionally, because of the pending appeal of the Connecticut Judgment and its statutory stayed, there is no "allowed amount" of the Connecticut Judgment by the bankruptcy court, because "[t]he ultimate amount of the nondischargeable debt could change if Jones succeeds on his state court appeal."  [See, pg. 15,  III, Interlocutory Order Memorandum Decision on Motion for Summary Judgment **Exhibit 2**].

33.    Remarkably the Connecticut Plaintiffs suggest that they can pursue that which the bankruptcy has exclusive jurisdiction to decide and has yet to decide, such as (i) what property is exempt property and what may be attached, and who is to decide this, the Plaintiffs or the Bankruptcy Court where that issue is pending;  or  (ii)  why property acquired after June 14, 2024 gives the Plaintiff access to the assets of Alex Jones *to collect on a non-final judgment* pending both:

(a) the appeal and superseded Connecticut Judgment that if reversed renders the judgment of no value and no recognition; or

(b)  the pending determination of the dischargeability of the Connecticut Judgment, which if found dischargeable is subject to the Discharge Injunction of the bankruptcy code prohibiting any efforts to collect the judgment.

Recall, on the first example (a) the existence of the Connecticut superseding of the appeal was not part of the Connecticut Plaintiffs pleadings or representation to the State District Court, and, as to the latter, the Connecticut Plaintiffs misrepresented to the State District Court the "finality" of any bankruptcy court order finding the Connecticut Judgment non-dischargeable.

34.     In fact, as a basis to appoint a receiver, is the Plaintiffs recognize in their Remand Motion that a receiver must be alert to the "…attention that must be given to delineate the bankruptcy Estate" from what the receiver may claim.  Remarkably, the Connecticut Plaintiffs argue that the receiver will make that call, not the bankruptcy court with the jurisdiction and matters now pending before it.  In fact, the function of determining these matters is within the exclusive jurisdiction of the bankruptcy court, in particular here having these matters pending before it -- the discharge issues, the exemptions issues, and the automatic stay to prevent multiple courts making those potential conflicting decisions, to name a few.

35.     Any turnover determination or exemption determination made by a state court receiver affects the controlling bankruptcy court's exclusive jurisdiction to do so, or at the very minimum, to recognize that it is the bankruptcy court that modifies the automatic stay to allow a receiver to proceed.

**F.     Response to the Argument that Permissible abstention and equitable remand are appropriate in this case**

36.     No doubt this Court has the jurisdiction to abstain from hearing this Removed case, however two important issues to first consider:  First, Alex Jones has pending a Motion to Transfer Venue to the Bankruptcy Home Court (that is now dealing with all issues raised in this Removed State Court case and the defenses and Counter-claims filed) which Motion should, under Fifth Circuit instruction, be determined first.  Second, in an abstention decision, the Connecticut Plaintiffs relegate to a footnote the fourteen (14) fact intensive factors District Courts and

Bankruptcy Courts review in an abstention decision.  The Connecticut Plaintiffs do not factually support any of the fourteen (14) factors but do disclose their true motive for their Remand Motion – to avoid the "… assertion of misplaced, improper 'counterclaims.'"  [*See*, ¶ 45. Pg. 20 Remand Motion].  These counterclaims are neither improper nor misplaced, but dove-tail into several pending matters to be determined by the bankruptcy court.  Abstention would literally dump into the lap of a State District Court complex issues of federal jurisdiction, bankruptcy jurisdiction, that the Connecticut Plaintiffs have tried their best to hide from the State Court (*e.g.*, no full faith and credit of a non-final superseded and stayed Connecticut Judgment that is pending in an ongoing bankruptcy case; bankruptcy jurisdiction over discharge of Jones debts and allowance of Jones exemptions and exempt assets (that has not determined by "final order" which the Connecticut Plaintiffs misrepresented), *vs.* a state court receiver; and multiple other complex issues of a party seeking to avoid that jurisdiction.

37.     In the face of federal jurisdiction, the rule is that federal courts have a virtually unflagging obligation to exercise the jurisdiction given them". *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).  And "because abstention runs so firmly against the jurisprudential grain," we treat abstention as "the exception, not the rule." *Chico Serv. Station, Inc. v. Sol P.R. Ltd*., 633 F.3d 20, 30 (1st Cir. 2011) (quoting Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993)) (quoting Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993)).  Here abstention makes no legal or practical sense and certainly the Connecticut Plaintiffs have not shown the court why the exception should control over the rule.

**G.      Response to the Argument that Costs and expenses incurred because of the removal should be awarded to the Connecticut Plaintiffs**

38.     The Connecticut Plaintiffs suggest to this Court that the removing defendant Alex Jones "lacked objectively reasonable grounds to believe the removal was legally proper." *citing

*Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 541 (5th Cir. 2004). Plaintiffs admit that the snap removal procedure initiated by Alex Jones is a recognized removal method in the Fifth Circuit. The Connecticut Plaintiffs never address the bankruptcy removal jurisdiction of the automatic stay from the case they are currently involved. Nor do they address their own initiation of the pending bankruptcy court Objection to the Dischargeability of the Connecticut Judgment which deals directly with whether the bankruptcy jurisdiction will allow or prohibits the right of a creditor to unilaterally collect on a claim, much less collect on a misrepresented claim to have "final order" from the bankruptcy court in which non-dischargeability *has not been finally determined*.

39.    In contrast, the Connecticut Plaintiffs base their Remand Motion primarily on the untenable position that there are no due process laws or rules in Texas required to be observed before a party obtains: (i) the domestication of a non-final judgment already stayed in the issuing state; or (ii) a Texas Court-ordered turnover of a Texas citizen's assets; or (iii) a Texas Court-ordered receivership ("one of the harshest remedies known to the law").[20]

40.    It is the Connecticut Plaintiffs that "lacked objectively reasonable grounds" to (i) decide to not serve Jones with a domestication notice or tell the Texas District Court that the Connecticut Judgment was stayed in Connecticut, and (ii) to improperly join Jones in a turnover of assets and receivership action, in violation of the automatic stay in the bankruptcy court they are actively participating; and (iii) to misrepresent to the State District Court that the Connecticut Judgment was the subject of a final order of the bankruptcy court holding that the majority of the Connecticut Judgment was non-dischargeable. And it is the Connecticut Plaintiffs that lacked objectively reasonable grounds to represent that Texas law does not require any due process in domesticating a judgment, in obtaining a turnover of a Texas citizen's assets, or obtain a receiver

---

[20]    *Pfeiffer v. Pfeiffer*, 394 S.W.2d 679 (Tex.Civ.App.-Houston, Oct 07, 1965); ***Jones v. Strayhorn***, 159 Tex. 421, 321 S.W.2d 290 (Tex., Feb 18, 1959); *In re Estate of Trevino*, 195 S.W.3d 223 (Tex. App. 2006).

of a Texas Citizen's property rights and freedom to deal with his own property.

41.     The contrast of "reasonable and "unreasonable" positions in this Removal is stark – and shows the actions that the Connecticut Plaintiffs have become accustomed.  Say what you want and do what you want without consequences, then blame the opposition for acting unreasonably, as a defense.  These removals are on sound footing, subject in all occasions to this Court venue decision.  There has been no Removing Defendant's misconduct at all, much less any conduct lacking reasonable grounds to the undertaking.

**IV.**
**CONCLUSION**

42.     This removal and the pending bankruptcy venue motion are designed to put back in the bankruptcy court that which never should have been undertaken in the State Courts of Texas by the Connecticut Plaintiffs.  Jones requests this Court review the pending Venue Transfer Motion and determine that transfer to the bankruptcy "home" court is the correct decision to allow the bankruptcy court to determine whether the Connecticut Plaintiffs, already in the bankruptcy court, has the right to begin collection efforts, receivership and turnover proceedings, against Alex Jones.

43.     The complexities created by the Connecticut Plaintiffs decision to ignore the bankruptcy court and pursue collection of their judgment in state court in face of the automatic stay and no final judgment finding that any amount of the Connecticut Plaintiffs, should weigh heavily against any remand or abstention.  With clear and direct original jurisdiction (this District Court's original bankruptcy jurisdiction) and timely and proper removal, the weight of sending to the any other court than the bankruptcy court is heavy.  The State Courts, although certainly qualified judicial officers, are not vaguely familiar with the complexities of this Removed case. The bankruptcy court is.

WHEREFORE, Alex E. Jones prays that this Court deny the Connecticut Plaintiffs' Motion to Abstain or Remand in all things, grant the Motion to Transfer Venue to the Bankruptcy Court, and grant such other and further relief to which Alex E. Jones may be justly entitled, both at law and in equity.

Dated: November 15, 2024

        */s/ Shelby A. Jordan*
        SHELBY A. JORDAN
        State Bar No. 11016700
        S.D. No. 2195
        ANTONIO ORTIZ
        State Bar No. 24074839
        S.D. No. 1127322
        ***Jordan & Ortiz, P.C.***
        500 North Shoreline Blvd., Suite 804
        Corpus Christi, TX  78401
        Telephone: (361) 884-5678
        Facsimile:  (361) 888-5555
        Email:  sjordan@jhwclaw.com
               aortiz@jhwclaw.com
        Copy to: cmadden@jhwclaw.com
        **COUNSEL FOR ALEX JONES**

        Ben C. Broocks
        State Bar No. 03058800
        Federal Bar No. 94507
        William A. Broocks
        St. Bar No. 24107577
        Federal Bar No. 3759653
        BROOCKS LAW FIRM P.L.L.C.
        248 Addie Roy Road, Suite B301
        Austin, Texas 78746
        Phone: (512) 201-2000
        Fax: (512) 201-2032
        Email: bbroocks@broockslawfirm.com
        **CO-COUNSEL FOR ALEX JONES**

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on November 15, 2024, a true and correct copy of the foregoing document was served via e-file/e-mail in accordance with the Texas Rules of Civil Procedure:

Ryan E. Chapple
rchapple@cstrial.com
Benjamin D. Evans
bevans@cstrial.com
Bethany G. Gingras
bgingras@cstrial.com
CAIN & SKARNULIS PLLC
303 Colorado Street, Suite 2850
Austin, Texas 78701

                      */s/ Shelby A. Jordan*
                      Shelby A. Jordan